## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 13-62166-CIV-ROSENBAUM/HUNT

CHERI SEROTA and MURRAY
SEROTA,

      Plaintiffs,

v.

CARRIAGE HILLS CONDOMINIUM
ASSOCIATION, INC.,

      Defendant.

_____/

### ORDER ON DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

This matter is before the Court upon Defendant's Motion to Dismiss or, In the Alternative, Motion for a More Definite Statement ("Motion to Dismiss") [ECF No. 7]. The Court has reviewed the Motion, all supporting and opposing filings, and the record in the case. For the reasons set forth below, Defendant's Motion to Dismiss is **DENIED**.

### I.  Background Facts

Plaintiffs Cheri Serota and Murray Serota filed suit setting forth claims against Defendant Carriage Hills Condominium Association, Inc., for alleged violations of the Florida Fair Housing Act, Chapter 760.23, *et seq.*, Florida Statutes (Count I), and the Federal Fair Housing Act, 42 U.S.C. §§ 3604 and 3613 (Count II). ECF No. 1. The action arises out of Plaintiffs' residency in the Carriage Hills Condominium community (the "Community"). *Id.* Defendant Carriage Hills Condominium Association, Inc., is the body that governs the Community. *Id.* ¶ 6. Plaintiffs claim

-1-

that they require service animals to assist them in their day-to-day lives but claim that Defendant refuses to make any accommodation for these service animals. *Id.* ¶ 4-17.

According to the Complaint, Plaintiffs initially moved into the Community in November 2008, after executing a rental agreement. *Id.* ¶ 8. The rental agreement purportedly included language that acknowledged that Plaintiffs, who are individuals with various disabilities, reside with service dogs who assist them in their daily lives. *Id.* The Complaint continues, after renewing their lease on several occasions, Plaintiffs elected to purchase a unit in the Community in January 2013. *Id.* ¶ 9.

When Plaintiffs made the transition from renters to owners, Defendant requested documentation demonstrating that Plaintiffs' dogs were service animals. *Id.* ¶ 9. Plaintiffs claim that they provided Defendant with the required documentation and then moved into their new home. *See id.* In mid-2013, Plaintiffs contend, Defendant first began to object to Plaintiffs' animals. *Id.* ¶ 11. At this point, Plaintiffs had resided in the Community with their service animals for over four years without incident or complaint. *See id.* ¶ 9, 11.

During a meeting held in early 2013, Defendant decided that all dogs would be barred from the Community and that Plaintiffs would again need to verify that their dogs were service-related animals. *Id.* ¶ 11. According to the Complaint, Defendant insisted that Plaintiffs were no longer permitted to take the dogs outside of their home, including into their small yard, effectively banning Plaintiffs from common areas of the Community. *Id.* ¶ 12. Although Plaintiffs had previously established their dogs as service animals, a fact that was seemingly acknowledged by Defendant throughout the four years prior, Plaintiffs nonetheless obliged. *See id.* ¶ 13. Plaintiffs sent Defendant's attorney documentation proving that the dogs were service animals but received no

response from Defendant.  *Id.* ¶ 13.

Additionally, Plaintiffs contend that in May 2013, they filled out an exemption form that included the necessary documentation regarding the dogs.  *Id.*  Again, Defendant allegedly ignored this documentation.  *Id.*  The Complaint continues, stating that eventually Defendant's attorney responded to Plaintiffs, requesting a litany of additional information and making threats of litigation if Plaintiffs did not comply with Defendant's new rule on pets.  *Id.* ¶ 15.  Based on the manner in which Defendant handled their requests, Plaintiffs believed that Defendant had no intention of approving Plaintiffs' request for an accommodation.  Plaintiffs then filed this lawsuit, in which they seek remedies both at law and in equity.  More specifically, Plaintiffs request permanent injunctive relief as well as punitive and compensatory damages against Defendant.  *See id.* at ¶ 17.

## **II.  Analysis**

Defendant brings its Motion to Dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P.  ECF No. 7.  In support of its motion, Defendant argues that (1) Plaintiff failed to satisfy the necessary "conditions precedent" for bringing a claim under the Florida Fair Housing Act ("FFHA") and (2) the Complaint does not comply with Rule 10, Fed. R. Civ. P.  *Id.*  After consideration, the Court respectfully rejects both arguments.

### **A.  Conditions Precedent for Bringing a Claim under the FFHA**

Defendant relies on Section 760.23, Fla. Stat., to support its Motion to Dismiss, arguing that Plaintiffs failed to meet a condition precedent before filing suit under the FFHA.  Although Defendant contends that Plaintiffs must petition the relevant local administrative agency (*i.e.*, the Florida Commission on Human Relations) before filing suit, Defendant does not cite to the precise statutory language that supports its argument.

-3-

Section 760.35, Fla. Stat., provides in relevant part,

> A civil action shall be commenced no later than 2 years after an alleged discriminatory housing practice has occurred.  However, the court shall continue a civil case brought pursuant to this section . . . from time-to-time before bringing it to trial if the court believes that the conciliation efforts of the commission or local agency are likely to result in satisfactory settlement of the discriminatory housing practice complained of in the complaint made to the commission or to the local agency and which practice forms the basis for the action in court.

§ 760.35(1), Fla. Stat.  Section 760.35 clearly contemplates that an action may be brought before the commission[1] or a local agency prior to a plaintiff filing suit in Court because it recognizes that an action may be ongoing in both fora.  Yet, contrary to Defendant's contention, the terms of the statute do not mandate that a party first seek relief from the commission or local agency.  And, significantly, another Florida statute expressly renders permissive the filing of a complaint with the commission.  Section 760.34, Fla. Stat., states in pertinent part,

> Any person who claims to have been injured by a discriminatory housing practice or who believes that he or she will be injured by a discriminatory housing practice that is about to occur *may file a complaint* with the commission.

§ 760.34(1), Fla. Stat. (emphasis added).

The language of Section 760.34(1) states that a plaintiff *may* file a complaint with the commission; the statutes does not state that a plaintiff *shall* file such a complaint.

Moreover, a party need not exhaust all other remedies before bringing a claim under the FFHA.  *Milsap v. Cornerstone Residential Mgmt., Inc.*, 2010 WL 427436 (S.D. Fla. Feb. 1, 2010).  In *Milshap*, the plaintiff brought an action under the FFHA and the Federal Fair Housing Act

---

[1] "Commission" under the statute means the Florida Commission on Human Relations. *See* § 760.02(2), Fla. Stat.

("FHA"). *Milshap*, 2010 WL 427436 at *1. Similar to Defendant's argument here, the defendant in *Milshap* sought to dismiss the complaint based on a failure to exhaust. *Id.* Although the court initially dismissed the plaintiff's claims on failure-to-exhaust grounds, on reconsideration, the court allowed Florida's Attorney General to intervene and later determined that exhaustion was not required. Indeed, the court concluded that "[t]he clear import of the []statutory language indicates a complainant may file a complaint and exhaust administrative remedies or, alternatively, commence a civil action. *Id.* at *3. In making its determination, the court relied on the position taken by the Attorney General that "as co-enforcer with the Florida Commission on Human Relations of the FFHA, it has always interpreted the right of the private individual to file a judicial action under the FFHA without first pursuing an administrative remedy." *Id.* at *1. Ultimately, after conducting a thorough analysis of the FFHA and its related federal counterparts, the court in *Milsap* determined that "the Florida Supreme Court would not require exhaustion of administrative remedies as a prerequisite to filing a claim under the FFHA."[2] *Id.* at *1-4.

Based on the Court's decision in *Milsap*, Defendant's Motion to Dismiss Count II of the Complaint for failure to exhaust administrative remedies is denied.

_____

[2]In reaching this conclusion, the court declined to follow *Belletete v. Halford*, 886 So. 2d 308 (Fla. 4th DCA 2004). The court recognized that "[i]n instances where a state's highest court has not ruled on a point of state law, 'federal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise.'" *Milsap*, 2010 WL 427436 at *4 (quoting *Pendergast v. Sprint Nextel Corp.,* 592 F. 3d 1119, 1133 (11th Cir. 2010) (citation and internal quotation marks omitted)). But after concluding that *Belletete* "did not follow the established tenet of statutory construction: '... if a state law is patterned after a federal law on the same subject, the Florida law will be accorded the same construction as given to the federal act in the federal courts[,]" the *Milsap* court determined that Florida's Supreme Court would not agree with *Belletete*'s construction of the FFHA. *Milsap*, 2010 WL 427436 at *4 (citation omitted). This Court reaches the same conclusion.

**B.  Defendant's Rule 10 Argument**

Defendant also claims that the Court must dismiss the Complaint because Plaintiffs failed to comply with Rule 10 of the Federal Rules of Civil Procedure.  ECF No. 7 at 3-4.  Rule 10 requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Rule 10(b), Fed. R. Civ. P.  Additionally, under Rule 10, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." *Id.*  Here, Defendant asserts that Plaintiffs improperly commingled facts and  circumstances in each paragraph and argues that the paragraphs do not distinguish between the claims for injunctive relief and those for damages.

This Court disagrees that the Complaint requires repleading.  The Complaint articulates various facts in a logical and concise manner.  Although the Complaint blends multiple statements of fact into singular paragraphs on several occasions, *see* ECF No. 1 at ¶ 4, the Complaint does not set forth facts in a manner that places Defendant at an impasse.  In other words, the Complaint puts Defendant on notice of Plaintiffs' claims and is organized in a fashion that allows Defendant to respond to the Complaint.  Defendant can respond to each paragraph with a simple "denied as to [Part A], admitted as to [Part B]."  Consequently, Defendant's Motion to Dismiss on this ground is denied.

Finally, Defendant's argument regarding separate counts is equally unpersuasive.  Rule 10 requires separate counts when a claim is founded on separate transactions or occurrences. *See* Rule 10(b), Fed. R. Civ. P.  In the instant case, Plaintiffs' claims under the FFHA and the FHA are based on a single sequence of events.  The Complaint separates each count based on cause of action and alleges in a succinct manner violations of one particular statute under each count. *Compare with*

*City of Fort Lauderdale v. Scott*, 773 F. Supp. 2d 1355, 1365 (S.D. Fla. 2011) (finding that a count failed to provide sufficient notice because it referenced a multitude of statutory provisions).  Any further partitioning of the Complaint would not "facilitate a clearer presentation of the allegations." *See Erikson v. Hunter*, 932 F. Supp. 1380, 1383 (M.D. Fla. 1996).  For these reasons, Defendant's Motion to Dismiss on Rule 10 grounds is denied.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss, or, In the Alternative, Motion for a More Definite Statement [ECF No. 7] is hereby **DENIED**.  Defendant shall file its Answer and Affirmative Defenses to the Complaint within **fourteen days of the date of this Order**.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 27th day of May 2014.


ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

cc: Counsel of record